UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                              No. 2:22-CR-25

SAMUEL OGOSHI and
SAMSON OGOSHI,                                                HON. ROBERT J. JONKER
                                                              U.S. District Court Judge

    Defendants.
_____/

**UNITED STATES' RESPONSE TO
DEFENDANTS' MOTIONS FOR DOWNWARD VARIANCE**

The United States submits this consolidated response in opposition to the defendants' motions for sentences below the advisory guideline range. In support of their motions, Samuel and Samson Ogoshi ask the Court to consider their background and history.

But the Ogoshis background and history includes their choice to commit this crime. They did not need the money; their family provided for them and paid for their education. They wanted the money to pay for newer cell phones and nice clothes. Despite not needing the money, they engaged in a conspiracy knowing that teenage boys and young men were goaded into taking their own lives. And after they knew a boy killed himself, they kept doing it.

In opposition of the defendants' motions, the government urges the Court to consider the nature and circumstances of the offense. It is a crime of callous greed.

The Court should deny the Ogoshis' requests and sentence them within the advisory Guideline range.

### I. The Ogoshis knew victims of their sextortion may die by suicide; they kept doing it after learning one had.

Samuel and Samson Ogoshi grew up with a loving and supportive family. While they endured hardships due to civil unrest, their parents provided for them and paid for them to attend university.  Samuel Ogoshi was in his second year studying sociology at Nasarawa State University.  Samson Ogoshi was accepted to Nasarawa State University and planned to attend.

Despite the support their family provided, Samuel and Samson Ogoshi chose to engage in sextortion to make a quick buck. They considered it faster and easier than other scams that were available to them. (R.88: Samuel Sent. Mem., PageID.834 ("There are many different types of schemes. Mr. Ogoshi participated in this type of blackmail because, if it was successful, the payment was quick.").) Neither Samuel nor Samson *needed* to engage in this scam to pay for subsistence or housing; their family supported them. They *wanted* money for nicer clothes and newer cell phones. (R.77: Samson PSR, PageID.649-50; R.78: Samuel PSR, PageID.698-99.)

Every member of the conspiracy—including the Ogoshis—knew about the extreme pressure put on victims. Samuel Ogoshi purchased a hacked Instagram account, and he changed the username and profile information to make it the dani.robertts account. (R.77: Samson PSR, PageID.649; R.78: Samuel PSR, PageID.697.)[1] Then, all of the conspirators logged into the hacked account to play a different role. (R.77: Samson PSR, PageID.651; R.78: Samuel PSR, PageID.699.) All of the conspirators saw messages as they were sent and received. (R.77: Samson PSR, PageID.699; R.78: Samuel PSR, PageID.699.)

---

[1] Because Samuel was the account owner and was logged in at the time of Jordan DeMay's death, the Instagram records made it appear Samuel sent the messages encouraging him.

-2-

One member would chat with the victim; another would use nude images to make a collage; and another would pressure the victim to extract money. (R.77: Samson PSR, PageID.651; R.78: Samuel PSR, PageID.699.) The conspirators used methamphetamine so they could stay awake longer and engage in more sextortion. In other words, the entire team of sextortionists worked together on every victim.

The Ogoshis continued to engage in this scheme even after realizing their victims were pushed to take their own lives. One of the conspirators told FBI that he remembered victims stating they were going to commit suicide. (R.77: Samson PSR, PageID.652; R.78: Samuel PSR, PageID.701.) And about a day after the conspirators urged Jordan DeMay to take his own life, they encouraged another victim to do so. (R.77: Samson PSR, PageID.646; R.78: Samuel PSR, PageID.695.) During his proffer interview, Samuel Ogoshi estimated Ezekiel Robert encouraged between 10 and 15 victims to take their own lives; he estimated Samson encouraged between 5 and 10 to do so.[2]

On March 25, 2022, the plan and pattern of a constant barrage of harassing and goading the victims to kill themselves inevitably led to the death of Jordan DeMay. But that did not stop the conspirators. They claim to have felt bad about their activities and stopped briefly.

A month after learning of Jordan's death, the conspirators resumed their coordinated pressure campaign. (R.77: Samson PSR, PageID.650; R.78: Samuel PSR, PageID.699.) They persisted in the same scam they knew had just caused a teenage boy to take his own life.

---

[2] This information is proffer-protected for Samuel Ogoshi but is proper to consider in sentencing Samson Ogoshi.

**II.      The Court should deny the downward variance requests because the Defendants risked children's lives—this was a gravely serious offense.**

"Your child is dead." No parent should ever suffer those words. To learn that your child took his own life deepens the pain. Then to discover that he was taunted and psychologically tortured to kill himself because he was being blackmailed leaves a hole of despair that a parent could rightfully fill with rage. Families are free to feel that range of emotion. Sentencing is not an expression of emotion. However, our collective sense of justice is informed by that loss. Substantial punishment is commensurate with the death of a child.

This was not a singular event. Sextortion is not about just one child. There are thousands being sextorted and dozens of children and young adults killing themselves as victims of sexual exploitation and blackmail. There is an epidemic of families crushed by loss.

With the death of a victim it is, however, possible to forget that the crime involves the creation of child pornography. Congress has deemed it appropriate that the crime of creating one illegal image is punishable by a mandatory minimum of fifteen years in prison. These defendants exploited more than a dozen minor boys. Causing them to create and send multiple illegal pictures. Substantial punishment is appropriate for inducing and encouraging minors to make pornographic pictures of themselves.

That crime was then leveraged into blackmail: pay cash or suffer the degradation, humiliation, and shame of your personal sexual moment displayed to your family, friends, and classmates.

That is the seriousness of this offense.

### III. The Court should also deny Defendants' downward variance request to deter other would-be sextortionists.

This was not a spur of the moment offense. It was a plan. A business model that required multiple steps, transactions, and dedicated effort. First, an unsuspecting Instagram user had their account hacked. The hacker takes over their account, deletes their profile, friends and contacts, pictures, and messages. All cast aside just to keep the bones of an account that looks like it's been in existence for a while. That hacked account becomes a product that is sold.

The hacked account is then rebuilt with a new profile, new pictures, new contacts, new content to create a lure—the come on of a pretty college girl who wants to be friends and share sexy pics. Some would-be victims or targets of this scam might sniff a fake and end the conversation. Others might not. That was the plan—cast a wide net and hope that a few would respond. The defendants contacted hundreds of boys and young men knowing that just a few would get caught in the trap.

This ad nauseum recitation of the offense conduct is critical to the message of deterrence. Each step is an effort that takes time and thought. Time and thought are opportunities for the Court to send a message that this scam is not the one to choose. The message must be made to others who might contemplate a similar crime: you risk spending decades, if not the rest of your life, in prison.

It is both tragic and ridiculous that lives are being taken for a measly few hundred dollars. The defendants bought shoes, clothing, and cell phones. The defendants have a cruel disregard for human life for very little gain. Many choices devolve into a matter of cost and benefit. Samuel and Samson Ogoshi understand now that the benefit is not

worth the cost. Others who are perpetrating this same sextortion must come to that same understanding.

### IV. Sentences within the Guideline Range are Appropriate.

The presentence report computed the offense level for both Samuel and Samson Ogoshi as level 43 with criminal history category I. That resulted in a recommended guideline sentence of life, but that is capped by statute at 30 years. Both defendants were facing multiple charges. If convicted of all counts, the Court could have stacked the counts and Samson Ogoshi could have been sentenced to a total of 55 years. Samuel Ogoshi could have been sentenced to life in prison. By allowing the defendants to only plead guilty to one count, they have already received substantial benefit in this case.

They have improved their positions at sentencing by first, pleading guilty and second, by cooperating against Ezekiel Robert. Because they cooperated, the government is asking the Court to reduce their offense level by 2, which would put them at offense level 41 and a revised range of 324 to 360 months of prison. The government anticipates that the Court will grant the motions. If so, Samuel and Samson Ogoshi have reduced the advisory guideline range and, at the low-end, face a sentence of 27 years. With credit for good behavior, the defendants could be released from prison after serving only 23 years. Samuel is 24 years old. He could be released and return home when he is 47 years old. Samson, who is 21 years old, could be home when he is 44. That is young enough to have a job and to have their own family. Two things that Jordan DeMay will never have.

This Court has sentenced numerous defendants convicted of sexually exploiting minors in violation of 18 U.S.C. § 2251(a), the same offense these defendants committed.

Within that group of defendants, there is a spectrum of conduct. Defendants who sexually exploit multiple children are often sentenced to 30 years or more. Even in that parade of horribles, we have never had a child die as a result of the exploitation. The sheer number of victims and tragic death of Jordan DeMay sets this case apart. The defendants highlighted their education and their plans for university. Jordan DeMay was accepted to Northern Michigan University with plans for a degree in Applied Exercise Science and Health. He was applying for scholarships. He will never go.

Time and an empathetic soul could make space for healing. Families may eventually find forgiveness. But our sentencing duty is not emotion, forgiveness, or redemption. It is about justice and accountability. A plea to one count is appropriate. The incremental reduction of the sentence for cooperation is appropriate. Sentences any lower, are not.

## CONCLUSION

ACCORDINGLY, the government respectfully submits that the Court should deny the motion for a below guideline sentence.

Respectfully submitted,

MARK A. TOTTEN
United States Attorney

Date:  August 29, 2024         /s/Daniel Y. Mekaru
                               DANIEL Y. MEKARU
                               Assistant United States Attorney

Date:  August 29, 2024         /s/Davin M. Reust
                               DAVIN M. REUST
                               Assistant United States Attorney